UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ABDUL BAQI RAHMANI,<br><br>Plaintiff,<br><br>v.<br><br>BRUCE SCOTT et al.,<br><br>Defendants. | CASE NO. 2:26-cv-02423-JNW<br><br>ORDER |

This matter comes before the Court on Petitioner Abdul Baqi Rahmani's petition for a writ of habeas corpus and request for injunctive relief. Dkt. No. 3. The Court GRANTS the petition IN PART and orders Rahmani's release for the reasons below.

## 1. BACKGROUND

Rahmani is a citizen of Afghanistan and Turkey. On April 20, 2023, United States Customs and Border Patrol ("CBP") detained him near San Ysidro, California, after he entered the country without admission or parole. Dkt. No. 7 ¶ 4. Six days later, the Government served him with a Notice to Appear in immigration court and released from immigration custody on an Order of Release on

Recognizance ("OREC"). *Id.* ¶¶ 6–7. Rahmani applied for asylum and related relief and moved to Arizona. On June 10, 2024, the immigration judge ("IJ") issued a written decision denying all relief and ordered him removed. Rahmani appealed. Dkt. No. 7 ¶¶ 10–11. While his appeal was pending, in July 2025, Rahmani sought asylum in Canada and was denied. Dkt. No. 8-2. CBP detained Rahmani after Canadian officials returned him to the United States and, in effect, revoked his OREC. Dkt. No. 8-3 at 3.

Department of Homeland Security ("DHS") records show that CBP officer Jeffrey Obrist revoked Rahmani's OREC and re-detained him because of the status of his immigration case. *Id.* He explains:

> Though Rahmani was ordered removed by an IJ on 6/10/24 since he has a pending appeal with the BIA he does not currently have a final order of removal. Currently CBP policy only allows for releasing subjects in Rahmani's situation if he has a pending future immigration court date or if he has an application with USCIS pending. Since Rahmani is only waiting for a BIA decision he does not have a future court date. Since his asylum was denied he does not have a pending asylum claim and since his EAD [Employment Authorization Document] card was approved he does not have any other applications currently pending with USCIS. Thus, Rahmani is being detained by CBP and is being forwarded to ERO [ICE Enforcement and Removal Operations] for custody.

*Id.* Rahmani was then transferred to the Northwest ICE Processing Center ("NWIPC"), where he remains in custody. On December 23, 2025, the BIA denied Rahmani's appeal, and his removal order became administratively final.

## 2. LEGAL STANDARDS

### 2.1 Habeas relief.

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. §§ 2254). A district court's habeas jurisdiction extends to challenges to immigration related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

### 2.2 Other equitable relief.

Federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional

violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). "Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has 'the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them,' 'irrespective of the accompanying habeas petition.'" *Francisco Lorenzo v. Bondi*, No. 2:25-cv-02660-LK, 2026 WL 237501, at *6 (W.D. Wash. Jan. 29, 2026) (quoting *Roman*, 977 F.3d at 941–42). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Plaintiffs seeking equitable relief in the form of permanent injunctions must show: "(1) that [they] ha[ve] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see Francisco Lorenzo*, 2026 WL 237501, at *6 (applying the permanent injunction standard to injunctive relief requested in immigration habeas proceedings).

## 3. DISCUSSION

### 3.1 Rahmani's re-detention without notice and a pre-deprivation hearing violated procedural due process.

The Government revoked Rahmani's ORECs and re-detained him without notice or a hearing. For nearly a year, courts in this District have applied *Mathews* and found again and again that due process requires the Government to give meaningful notice and a pre-deprivation hearing before revoking a noncitizen's release and returning them to custody.[1] The Government does not oppose this claim. Under Local Civil Rule 7(b)(2), the Court considers this failure a concession by the Government that the claim has merit. *See Allianz Glob. Risks U.S. Ins. Co. v. Ershigs, Inc.*, 138 F. Supp. 3d 1183, 1189 n.6 (W.D. Wash. 2015) (Courts may apply

---

[1] *See e.g., Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1203 (W.D. Wash. 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025); *E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1234 (W.D. Wash. 2025); *Garcia Radillo v. Scott*, No. 2:26-cv-02357-JHC, 2026 WL 2168044, at *4 (W.D. Wash. July 28, 2026); *Pablo v. ICE Field Off. Dir.*, No. 2:26-cv-01197-JHC, 2026 WL 2098018, at *5–6 (W.D. Wash. July 21, 2026); *Victoriano v. Mullin*, No. 2:26-cv- 00886-RAJ, 2026 WL 1194596, at *8 (W.D. Wash. May 1, 2026); *Soto v. Bondi*, 2:26-cv-00652-BAT, 2026 WL 972731, at *7 (W.D. Wash. Apr. 10, 2026); *Medero v. Hermosillo*, No. C26-0568JLR, 2026 WL 891355, at *3 (W.D. Wash. Apr. 1, 2026); *Gomez Candelo v. Noem*, No. 2:26-cv-00576-JNW, 2026 WL 879049, at *3–*4 (W.D. Wash. Mar. 31, 2026); *Bravo-Zambrano v. Bondi*, No. C26-0167JLR, 2026 WL 879245, at *5 (W.D. Wash. Mar. 31, 2026); *Sing Uppal v. Noem*, No. 2:26-cv-00711-RAJ, 2026 WL 864682, at *3 (W.D. Wash. Mar. 30, 2026); *Husen v. Noem*, No. 2:26-cv-00498-JHC, 2026 WL 632365, at *5 (W.D. Wash. Mar. 6, 2026); *Arrega Morales De Putul v. Hermosillo*, No. 2:26-cv-00129-GJL, 2026 WL 468637, at *2 n.1 (W.D. Wash. Feb. 19, 2026) (collecting cases); *Teweldemedhin v. Noem*, No. C25-2363JLR, 2026 WL 172029, at *4–5 (W.D. Wash. Jan. 22, 2026); *Todd v. Bondi*, No. 25-cv-02519-JHC, 2026 WL 145725, at *6 (W.D. Wash. Jan 20, 2026); *Manuel v. Hermosillo*, C25-2353-TL-MLP, 2025 WL 3690778, at *2–*4 (W.D. Wash. Dec. 10, 2025); *Rodriguez v. Bondi*, C25-2167RSM, 2025 WL 3466925, at *2 (W.D. Wash. Dec. 3, 2025); *P.T. v. Hermosillo*, No. C25-2249-KKE, 2025 WL 3294988, at *4 (W.D. Wash. Nov. 25, 2025) (collecting cases); *Dejesus v. Bostock*, No. 25-cv-01427-JHC-TLF, 2025 WL 3268002, at *4 (W.D. Wash. Nov. 24, 2025).

LCR 7(b)(2) when a party fails to oppose an argument or claim in its opposition.). Moreover, the Court finds no reason to distinguish this case from all the others. *See supra* n.1.

Considering the first *Mathews* factor, Rahmani has a strong liberty interest in not being detained. As the great weight of authority in this District and around the country have found, an individual's "interest in not being detained is 'the most elemental of liberty interests.'" *Osuna Benitez v. Hermosillo*, No. 2:25-CV-02535-BAT, 2025 WL 3763932, at *3 (W.D. Wash. Dec. 30, 2025) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects.").

The second *Mathews* factor—the risk of erroneous deprivation—weighs heavily in Rahmani's favor. Based on the record, Rahmani's OREC was never officially revoked. Nevertheless, he was detained. Moreover, the Government's briefing never plainly states *why* Rahmani was detained. The reason can be found in CBP Officer Obrist's case notes, which show that the Government re-detained Rahmani because: (1) he had no "future immigration court date," as he was appealing his immigration court order; and (2) he no longer had applications pending with USCIS, as he had already been granted employment authorization, which authorized him to work legally in the United States. Dkt. No. 8-3 at 3. The Government makes no attempt to justify or support Officer Obrist's reasoning or decision, from either a legal or a factual standpoint. Given these facts, and given the

Government's complete failure to address them, the risk that Rahmani was erroneously deprived of his liberty is very high.

As for the third *Mathews* factor, the Court finds that the Government's interests in Petitioners' re-detention without a hearing is minimal, as it has previously concluded. *Espinoza Palacios v. Hermosillo*, 2:26-cv-491-JNW, 2026 WL 686138, at *8 (W.D. Wash. Mar. 11, 2026) (citing *Ledesma Gonzalez*, 808 F. Supp. 3d at 1203).

Weighing the *Mathews* factors, the Court finds that Rahmani has a protected liberty interest in his continued release, and that due process required notice and a hearing before an immigration judge before he could be re-detained. Accordingly, the Court finds that he was re-detained in violation of the Constitution of the United States.

### 3.2 Rahmani's confinement is unlawful under *Zadvydas*.

Now that his removal order is administratively final, the Government claims to detain Rahmani under 8 U.S.C. § 1231(a)(6), which authorizes detention beyond the statutory 90-day removal period that follows a final order of removal. In *Zadvydas*, the Supreme Court held that 8 U.S.C. § 1231(a)(6) "does not permit indefinite detention." 533 U.S. at 689. Rather, it allows detention only for "a period reasonably necessary to bring about that [noncitizen]'s removal from the United States." *Id*. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699.

The Court established six months as the "presumptively reasonable" period of post-removal-order detention. *Id.* at 701. After six months, "once the noncitizen provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* (citation modified). And "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* The Government's burden to justify continued detention thus grows heavier over time. *Id.*

The Government concedes that Rahmani's detention passed the six-month mark on June 23, 2026. Dkt. No. 6 at 6. It still has no travel document for him. Dkt. No. 7 ¶¶ 16–17.

Rahmani has given "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. As several district courts have recently found, "Afghanistan is in turmoil under Taliban rule, and the United States does not recognize the Taliban as the government of Afghanistan, such that there is no United States Embassy in Afghanistan." *Ahmadzai v. Mullin*, No. 26-CV-2641 JAO (MSB), 2026 WL 1333753, at *2 (S.D. Cal. May 13, 2026); *see also Samir v. Wolf*, No. 1:25-CV-01397, 2026 WL 817240, at *2 (W.D. La. Mar. 2, 2026) (taking into account civil conflict and genocide in Afghanistan under Taliban rule); *Jalili v. Semaia*, No. 5:26-cv-01703-MBK, 2026 WL 1084739, at *3 (C.D. Cal. Apr. 16, 2026) ("There is no current system for removing Afghan nationals back to Afghanistan, given that the United States does not recognize the Taliban government."); *Rahimi v. Semaia*, No. ED CV 26-00116-

DMG (RAO), 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("Petitioner states that there is no 'established practice for repatriating noncitizens like Mr. Rahimi to Afghanistan as the United States does not recognize Taliban as the official government of Afghanistan[.]'"). Rahmani argues that deportation flight data illustrates his point, stating that in 2025, "no immigration charted flights were to Afghanistan." Dkt. No. 3 at 12. The Government does not dispute this claim.

The Government fails to rebut Rahmani's showing. It first argues it has made a "good faith attempt to obtain a travel document to Afghanistan" but that "Petitioner has been non-cooperative by failing to provide necessary biographic information to complete the applications for a travel document."[2] Dkt. No. 6 at 6. Its support for this claim is that Rahmani refused to sign a "Form I-229a Warning for Failure to Depart" in January, February, and April of 2026. Dkt. No. 7 ¶ 15; *see* Dkt. No. 8-4. But refusing to sign a warning is not the same as withholding "necessary biographic information" to assist in his removal. To the contrary, the record shows that Rahmani *did* provide the requisite information because the Government was able to compile his travel document application by March 2026, and submitted it shortly after that. *See* Dkt. Nos. 7 ¶ 15; 8-5.

The Government also states that "there is no indication that a travel document will not be issued" for Rahmani. Dkt. No. 6 at 6. But this vague claim completely fails to address Rahmani's persuasive arguments as to why he likely will

---

[2] The Ninth Circuit has held that a noncitizen who "refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government" cannot meet their burden under *Zadvydas*. *Lema v. I.N.S.*, 341 F.3d 853, 856 (9th Cir. 2003).

not receive a travel document in the reasonably foreseeable future. These conclusory assertions are unpersuasive and fail to rebut Rahmani's showing under *Zadvydas*. *See, e.g.*, *Chen v. Hermosillo*, No. 2:26-cv-00067, 2026 WL 252077, at *3 (W.D. Wash. Jan 30, 2026) (citing *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006) (Government failed to meet *Zadvydas* standard on rebuttal because it provided "no substantive indication regarding how or when it expect[ed] to obtain the necessary travel documents" to remove the petitioner)).

Because there is no significant likelihood that Rahmani will be removed in the reasonably foreseeable future, his continued detention is no longer authorized by statute. He must be released.

### 3.3 The Court grants in part Rahmani's requests for injunctive relief.

Beyond release, Rahmani asks the Court to order that "Respondents may not re-detain him without first holding a hearing before a neutral decisionmaker at which Respondents bear the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances." Dkt. No. 3 at 32. He also asks the Court to bar Respondents from re-detaining him unless they obtain a valid travel document for Afghanistan or Turkey, give it to his counsel, and offer him two months to depart on his own before re-detaining him. Dkt. No. 3 at 32. Finally, he asks the Court to bar Respondents from removing him to a third country without notice and a meaningful opportunity to respond in reopened removal proceedings, and from removing him to any third country where he is likely to face imprisonment or other punishment upon arrival. *Id.*

Rahmani has met the requirements for some, but not all, of this relief. *See eBay*, 547 U.S. at 391. He suffered irreparable injury when he was deprived of his liberty without due process and spent over a year in ICE detention. No monetary remedy can compensate for that constitutional deprivation. The balance of hardships favors Rahmani, as the injunction requires only that the Government comply with due process before re-detaining him. And the public interest is served by an order prohibiting the Government from violating the Due Process Clause. The Court further finds that injunctive relief is appropriate because Rahmani has shown a "cognizable danger of recurrent violation." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). ICE has detained him once already in violation of his due process rights. Additionally, it is well known in this District that ICE revokes noncitizens' release and detains them without due process. *See supra* n.1.

#### 3.3.1 Respondents must comply with the law if they re-detain Rahmani.

Once released, Rahmani will remain subject to an Order of Supervision ("OSUP") and thus have a liberty interest in his continued freedom that due process protects. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). For the reasons explained above, due process requires that Rahmani receive notice and a pre-deprivation hearing if the Government intends to revoke his OSUP or otherwise detain him. At any such hearing, the Government bears the burden of justifying the revocation and re-detention by clear and convincing evidence. *Cf. J.E.H.G. v. Chesnut*, No. 1:25-CV-01673-JLT SKO, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9,

2025) ("Since it is the Government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.").

Federal regulation 8 C.F.R. § 241.13(i) governs OSUP revocation. It permits the Government to revoke an OSUP "if, on account of changed circumstances, [it] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). It also permits OSUP revocation if the noncitizen has violated the conditions of their release. 8 C.F.R. § 241.13(i)(1). So if the Government seeks to re-detain Rahmani because it believes there is a significant likelihood that he may be removed in the reasonably foreseeable future, its decision must be supported by changed circumstances. *See Uprety v. Bondi*, No. 2:25-CV-02443-JNW-MLP, 2026 WL 194227, at *4 (W.D. Wash. Jan. 26, 2026). The mere passage of time will not do, nor will a repeat of the same generalized removal efforts that have yet to produce a country willing to accept Rahmani. Indeed, a noncitizen cannot be re-detained merely because he is subject to removal proceedings. *Chavez v. Casey*, No. 26-CV-03656-BAS-BJW, 2026 WL 2161204, at *2 (S.D. Cal. July 27, 2026).

Rahmani asks the Court to go further and require the Government to prove he is a flight risk or danger to the community at any future re-detention hearing. Many district courts, including this one, have imposed that requirement when a petitioner's "initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Espinoza Palacios*, 2026 WL 686138, at *11 (quoting *Espinoza v. Kaiser*, No. 1:25-cv-01101 JLT SKO,

2025 WL 2581185, at *14 (E.D. Cal. Sept. 5, 2025)); *see also Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034, 1038 (N.D. Cal. 2025). When an individual is released under those criteria, courts have found that the released individual "has a strong interest in remaining at liberty unless [they] no longer meet those criteria," and that their release "constitute[s] an 'implied promise' that [their] liberty w[ill] not be revoked unless [they] 'fail[] to live up to the conditions of [their] release.'" *Pinchi*, 792 F. Supp. 3d at 1034 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

Rahmani is in a different position. True, his initial release on an OREC, as permitted by 8 U.S.C. § 1226(a), rested on a finding that he did not pose a flight risk or danger to the community. *See Espinoza Palacios*, 2026 WL 686138, at *10 (citing 8 C.F.R. § 1236.1(c)(8)). But once his removal order became administratively final, Rahmani's detention became governed by 8 U.S.C. § 1231(a). And he is entitled to release under *Zadvydas* because his detention is indefinite—a conclusion that holds whether or not the Government thinks he is dangerous or likely to flee. *See Zadvydas*, 533 U.S. at 690–91 (holding that neither "protecting the community" nor "ensuring the appearance of aliens at future immigration proceedings" are a "sufficiently strong special justification for indefinite civil detention—at least as administered under [8 U.S.C. § 1231(a)(6)]"; reminding the Government that immigration proceedings are civil—not criminal—in nature). The added protection that Rahmani seeks is not relevant to any future OSUP revocation hearing. *See also* 8 C.F.R. § 241.13(i) (general findings of "flight risk" and "danger to the community" are not bases for revoking OSUPs).

Because the Court finds notice and a pre-deprivation hearing sufficient to protect Rahmani's due process rights, the Court does not order the Government to provide a valid travel document to Rahmani and his counsel prior to re-detention or offer him the opportunity to self-deport.

#### 3.3.2 The Court rejects the Government's remaining arguments on injunctive relief.

The Government argues that it need not provide notice or a pre-deprivation hearing because the applicable regulation, 8 C.F.R. § 241.13(i), does not require either. Even if the Government's interpretation is correct, which the Court does not decide, the Government's argument ignores the procedural protections imposed by the Due Process Clause, as discussed above. *See Espinoza Palacios*, 2026 WL 686138, at *6 n.1 (collecting cases); *see also Bealter Reyes et al. v. Hermosillo et al.*, Case No. 2:26-cv-00270-TLF, 2026 WL 507678, at *2 (W.D. Wash. Feb. 24, 2026) ("[T]he Court need not consider whether there is a statutory basis . . . upon which petitioners may be lawfully detained . . . because even assuming a statute permits government detention of an individual, the Due Process Clause may provide procedural protections not found in the statute.").

The Government also argues that the Court lacks jurisdiction to require notice and a pre-deprivation hearing under 8 U.S.C. § 1252(g). The Court considers and rejects this argument. *See Ahmad v. Whitaker*, No. C18-287, 2018 WL 6928540, at *4 (W.D. Wash. Dec. 4, 2018), *R & R adopted*, 2019 WL 95571 (W.D. Wash. Jan. 3, 2019) (rejecting government's argument that 8 U.S.C. § 1252(g) precluded jurisdiction over challenge to revocation of OSUP and collecting cases).

#### 3.3.3 Rahmani's third country removal claims are not ripe.

The Government does not indicate that it is trying to remove Rahmani to a third country. Rahmani acknowledges this in his petition, stating that his "theoretical third country removal is not likely [to occur] in the reasonably foreseeable future" because ICE has not designated any third country for removal. Dkt. No. 3 at 13. As the claims are not ripe, the Court declines to address them.

## 4. CONCLUSION

Accordingly, the Court ORDERS:

1. Rahmani's petition for a writ of habeas corpus is GRANTED. Dkt. No. 3.
2. Respondents must RELEASE Petitioner from custody within TWENTY-FOUR (24) HOURS of this order, subject to his prior conditions of release.
3. Petitioner must not be re-detained unless Respondents provide Petitioner with written notice and a pre-deprivation hearing to respond to and contest the decision. At any future re-detention hearing, the Government will bear the burden of proving that revocation of release and re-detention are lawful and warranted by clear and convincing evidence.
4. All other requested relief is DENIED WITHOUT PREJUDICE as stated in this order.

Dated this 1st day of September, 2026, at 10:06 a.m.

Jamal N. Whitehead
United States District Judge